ARMSTRONG & KASSEBAUM v. COYNE BROTHERS.

No. 12,069.   [67 Pac. 537.]

SYLLABUS BY THE COURT.

1. VENDOR AND PURCHASER— *Presumption from Manner of Consignment.* One who sells goods to another to be shipped by carrier, but makes the shipment to himself as consignee, will be presumed, in the lack of evidence to the contrary, to intend a reservation of title in himself, and if the goods do not reach the buyer, the seller cannot recover for them on the theory that a delivery to the carrier was a delivery to the buyer and passed the title of the goods.

2. ———— *Requirement of Bond Invalid.* A vendor of goods to

be shipped by carrier cannot impose on the vendee an obligation
to give the carrier a bond of indemnity against the vendor's lien
in order to obtain the goods, without showing a usage of trade or
a special course of dealing between themselves to that effect.

Error from Shawnee district court; Z. T. HAZEN,
judge.   Opinion filed January 11, 1902.   Affirmed.

*Isenhart & Alexander*, for plaintiffs in error.

*Jetmore & Jetmore*, for defendants in error.

The opinion of the court was delivered by

DOSTER, C. J. : This was an action by Armstrong
& Kassebaum against Coyne Brothers on an account
for potatoes sold by the former to the latter.   The
plaintiffs do business at Topeka and the defendants
at Chicago.   A contract for a car-load of potatoes to
be shipped to the defendants was made by telegraph
on the 23d day of July, and the shipment was made
on that day.   The plaintiffs had a bill of lading made
to themselves as consignees.   They drew a sight-draft
on defendants for the amount of the shipment and at-
tached the bill to it and sent notice and invoice
through the mail.   The bank at Chicago to which
the draft and bill of lading had been sent suspended
business before collection could be made, in conse-
quence of which the defendants were unable to obtain
the car of potatoes in the usual way, viz., by pres-
entation of the bill of lading and the draft showing
payment.   In order to obtain it, they gave an indem-
nity bond to the railroad company.   On July 28 the
plaintiffs made another contract by telegraph with
defendants to ship the latter two more cars of pota-
toes, and the shipments were made on that day, the
plaintiffs, as before, taking out bills of lading in their
own names as consignees, and drawing on defendants

at sight through the suspended bank, with bills attached. As in the case of the first car-load, the draft was not paid because, on account of the bank's suspension, it was not presented, and similarly the defendants were unable to obtain the potatoes from the railroad company. They notified the plaintiffs of that fact, whereupon the latter suggested to them to give bond as before and in that way get the goods. This they declined to do. The plaintiffs thereupon sold the potatoes, but at a loss, in consequence of which they brought suit. Judgment went against them in the court below, to reverse which error has been prosecuted.

The claim of error is based upon the proposition that in case of the sale of property to be shipped to the buyer, title passes upon delivery to the carrier. Such is, undoubtedly, the general rule, but it is a rule of evidence rather than of property. The question whether, in such cases, title passes is, in the ultimate, one of intention. The delivery of goods by a consignor to a carrier for shipment to a consignee, without other circumstances indicating a contrary intention, is held to pass title to the latter; but the almost universal holding of the courts is that a shipment by a seller to himself, as consignee, of goods intended for another, is, in the lack of evidence of a contrary intention, a reservation of title in himself. (*Willman Mercantile Co. v. Fussy*, 15 Mont. 511, 39 Pac. 738, 48 Am. St. Rep. 698.) There is nothing in the record in this case indicating that notwithstanding plaintiffs shipped the potatoes to themselves as consignees they nevertheless intended that title should pass to the defendants. The evidence indicates a contrary intention.

Grant, however, that title passed to defendants and that plaintiffs reserved only their vendor's lien for the

purchase-price of the potatoes. They could not impose on the defendants the unusual—the extraordinary—requirement to give an indemnity bond to the railroad company in order to discharge the lien and get the goods. True, the defendants had given such kind of bond in order to get the first car, but that one instance did not create a course of dealing between the parties in respect to which it could be said that they had subsequently contracted, and there was no evidence that the giving of bonds in such cases was practiced as a usage of trade. Assuming the defendants' ownership of the potatoes encumbered by the plaintiffs' lien, the former were only under obligation to discharge the lien in money. They were not under obligation to give security against it. The plaintiffs' insistence on a condition apart from the requirements of the contract and the customs of business amounted to a rescission of such contract and a reclamation of the goods.

The judgment of the court below is affirmed.

JOHNSTON, SMITH, GREENE, JJ., concurring.